THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN ERROR, v. WILLIAM LEARY, DEFENDANT IN ERROR.

A person driving a team on a turnpike which ran nearly parallel to and a short distance from a railroad, when within fifteen or twenty yards of where the turnpike turned and crossed the railroad, "merely turned his head" and looked in the direction from which a train was in fact approaching the crossing, and seeing no train, and hearing no sound, drove on and was struck just as he was on the railroad tracks, there being nothing to prevent his having an uninterrupted view of the railroad track for half a mile, and nothing to distract his attention before attempting to cross the track, is guilty of contributory negligence, it appearing that proper caution would have prevented the collision, and he should have been nonsuited.

On error.

For the plaintiff in error, *Samuel H. Grey.*

For the defendant in. error, *Samuel K. Robbins* and *John W. Wescott.*

The opinion of the court was delivered by

ABBETT, J.   On June 19th, 1893, at half-past nine o'clock at night, William Leary, the plaintiff below, was driving two mules, hitched to an open market wagon, on the Moorestown and Mount Holly turnpike road.   The railroad of defendant below crosses this highway at what is known as the "Long Crossing."   This turnpike, before it reaches the crossing, runs

"quite near" to and almost parallel to the railroad for at least half a mile. As it reaches the place of crossing the turnpike turns to cross the railroad. During this half mile, according to the testimony of Leary, there is nothing between the turnpike and the railroad which would prevent anyone who was traveling along the turnpike road, and who looked towards the railroad, from seeing the railroad, and he said "if there was any train on the railroad you could see the train on the railroad if you looked towards it." The night was "a dark, drizzly night, wind blowing from the east." He was also traveling towards the east, and had blankets thrown over him to protect him from the storm. He was driving the team "a little faster than an ordinary walk at the time." The train "was coming from towards Philadelphia and running eastward." He therefore had his back to the approaching train until he got on the crossing, and then as he turned to cross the railroad at "Long Crossing" his left side was towards the train. Leary testified: "When I got within reasonable distance [this he afterwards states was within fifteen or twenty yards of the crossing] for taking precaution for this railroad, I took precautions, merely just turning my head, knowing that it wasn't train time, but I took a *slight precaution*, brought the team up, and saw nothing but an electric light." He did not stop the team entirely, but just pulled the team up to a slow gait so he could stop it if he heard any noise. He then heard no noise and decided that there was no train there, and drove on and "nudged the team up" and proceeded to cross the railroad. He was right on the railroad track with his team when he heard the whistle of the locomotive, and was immediately struck by the engine and he became unconscious.

Did Leary exercise such caution as a person of ordinary prudence should exercise under the circumstances? If he did not, the trial judge should have nonsuited him. *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180, 184. This same case holds that when a person is about to cross a railroad it is his

duty to exercise the highest practicable degree of care in avoiding the danger.

He could see the track for half a mile; there was nothing in that distance to obstruct his view of the headlight of the approaching locomotive; he could have looked before he attempted to cross the track. He did nothing except "merely just turning his head" when within fifteen or twenty yards of the crossing, and then went ahead to cross the tracks. He calls his action "a slight precaution," a "little precaution," and states what is apparently a reason for this "slight" or "little" precaution, that he knew there was no regular train there at that hour. If it be true that the engineer did not give the statutory signal, this would not relieve Leary from making the proper observation and using the proper caution on his part, because there was nothing to distract his attention, and he had ample opportunity to view the road for over half a mile and see the approaching train, and avoid the danger.

It is clear, from his own testimony, that Leary did not exercise that caution which a person of ordinary prudence would have exercised under the circumstances, and that his conduct did contribute to the production of the injury to himself.

The motion for a nonsuit should have been granted.

The judgment below should be reversed and a new trial ordered.

*For affirmance* — DIXON, MAGIE, REED, BOGERT, BROWN. 5.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, ABBETT, LIPPINCOTT, VAN SYCKEL, KRUEGER, SMITH. 7.